UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIS BANK d/b/a US PREMIUM FINANCE, a Georgia banking corporation,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH BERTOLINO INSURANCE AGENCY INC. d/b/a PROPERTY SHIELD INSURANCE BROKERAGE, a California corporation; and JOSEPH STEWART BERTOLINO, an individual; and DOES 1 through 21,inclusive,<br><br>Defendants. | No. 2:26-cv-00901 DAD AC<br><br>FINDINGS AND RECOMMENDATIONS |

This case is before the court on plaintiff's motion for default judgment. ECF No. 15, which was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(19). The motion was taken under submission on the papers. ECF No. 16. For the reasons set forth below, the undersigned recommends plaintiff's motion be GRANTED, and that judgment be entered in favor of plaintiff.

## I. Relevant Background

Plaintiff filed its complaint for breach of contract, breach of fiduciary duty, and fraud/intentional misrepresentation on March 13, 2026, asserting jurisdiction pursuant to 28 U.S.C. §1332. ECF No. 1 at 1-3. Plaintiff Ameris Bank ("Ameris") is a Georgia corporation engaged in the business of premium finance lending and is authorized to conduct business in the State of California. Id. at 2. Defendant Joseph Bertolino Insurance Agency Inc. d/b/a Property

Shield Insurance Brokerage ("JB Insurance") is a California corporation engaged in the business of insurance brokerage. Id. Defendant Joseph Stewart Bertolino ("Bertolino") is an individual residing in Sacramento County and is a principal and/or officer of JB Insurance, who acted in his individual capacity in connection with the matters alleged in the complaint. Id.

Per the complaint, defendants, in their capacity as insurance brokers, submitted premium loan financing applications on behalf of prospective borrowers to induce Ameris to issue twenty-one (21) loans (collectively, the "Loans") to various individuals and entities. Id. at 4. Based on defendants' recommendations, representations, and documentation, Ameris issued the Loans totaling $431,528.07. Id. Defendants breached their duty of care to Ameris by failing to exercise reasonable diligence and prudence when reviewing and submitting premium loan financing applications on behalf of prospective borrowers. Id. Ameris relied on defendants' recommendations, representations, and documentation when issuing the Loans. Id. Defendants breached their fiduciary duty to Ameris by failing to act with the utmost good faith and fair dealing in their review and submission of the documentation related to the Loans. Id.

On or about July 3, 2025, Ameris and defendants entered into a written Forbearance Agreement (the "Agreement"), a copy of which is attached the complaint as Exhibit A and incorporated into the complaint by reference. See ECF No. 1 at 11-24. Under the Agreement, defendants acknowledged and admitted that they breached their fiduciary duty to Ameris and that, as of the effective date thereof, defendants jointly and severally owed Ameris $431,528.07 in damages (the "Indebtedness"), plus attorneys' fees and costs incurred by Ameris in connection with the investigation and enforcement of the Loans. Agreement at Recitals F., G., I. Under the Agreement, defendants acknowledged and admitted the entire Indebtedness was immediately due and payable as of the effective date. Agreement at Recital J. The Agreement included a payment plan, and under the Agreement, in the event of default, Ameris retained the right to terminate the Agreement without further notice and demand all rights and remedies available in law or equity. ECF No. 1 at 5. The Agreement further stated that, upon default, interest would accrue on the outstanding balance at the rate of 10% per annum, and that defendants are responsible for all costs, charges, and reasonable attorneys' fees incurred by

Ameris. Id.

Defendants made payments from June of 2025 through January of 2026 but failed to make the required $5,000.00 payment due on February 1, 2026, constituting an Event of Default under Section 11.(c) of the Agreement. ECF No. 1 at 6. On or about February 20, 2026, Ameris, through counsel, sent defendants a written demand-to-cure letter via certified mail, affording defendants seven (7) days to cure the default. Id. Defendants failed to cure the default within the specified cure period or at any time thereafter. Id. As a result of the Event of Default, the Agreement has terminated, and Ameris seeks money judgments in the full amount of the Indebtedness pursuant to Section 13 of the Agreement. Id. Based on payments received through January 2026 totaling approximately $75,000.00, the outstanding principal balance of the Indebtedness is approximately $356,528.07, plus default interest accruing at 10% per annum from February 1, 2026, plus all attorneys' fees and Enforcement Costs as defined in the Agreement. Id.

Summons for both defendants were returned executed on April 17, 2026. ECF Nos. 5, 6. The Clerk of Court entered default as to both defendants on May 13, 2026. ECF No. 12. Plaintiff filed the pending motion for default judgment on June 12, 2026. ECF No. 15. The motion was served on both defendants. ECF No. 15 at 18. Neither defendant responded to the motion, and neither defendant has made any appearance in this case.

## II. Motion

Defendant moves for default judgment on all counts, seeking (1) money damages in the amount of $356,528.07, reflecting the outstanding portion of the Indebtedness; (2) post-default interest accruing at the contractual default rate of 10% from February 1, 2026 to July 20, 2026, in the amount of $16,607.30, and accruing thereafter at $97.69 per day pursuant to the Agreement; (3) reasonable attorneys' fees and costs incurred by plaintiff in enforcing the Forbearance Agreement in an amount to be determined in future proceedings. ECF No. 15-3 at 2.

## III. Analysis

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party

against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

Once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law") (citation and quotation marks omitted); Abney v. Alameida, 334 F.Supp.2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, although it does not establish the amount of

damages. Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the defaulting party).

B. The Eitel Factors

1. Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Here, plaintiff would suffer prejudice if the court did not enter a default judgment because it would be without recourse for recovery. Accordingly, the first Eitel factor favors the entry of default judgment.

2. Factors Two and Three: Merits of Claims and Sufficiency of Complaint

The merits of plaintiff's substantive claims and the sufficiency of the complaint are considered here together because of the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F.Supp.2d at 1175. Here, the merits of the claims and sufficiency of the complaint favor entry of default judgment.

Plaintiff brings a breach of contract claim. ECF No. 1. Under California law, a breach-of-contract claim requires (1) the existence of a valid contract, (2) plaintiff's performance, (3) defendant's breach, and (4) resulting damages. Oasis W. Realty, LLC v. Goldman, 51 Cal.4th 811, 821 (2011); E.D.C. Techs., Inc. v. Seidel, 216 F.Supp.3d 1012, 1015 (N.D. Cal. 2016). All four elements are established and admitted here.

The Agreement is a valid and enforceable contract. In its recitals, defendants expressly admitted that they had breached their fiduciary duties to Ameris in connection with the Loans, and acknowledged owing Ameris $431,528.07, plus attorneys' fees and costs. Agreement, Recitals F, G, I. The Agreement required defendants to make a $35,000.00 initial payment by July 30, 2025, followed by monthly payments of $5,000.00 beginning September 1, 2025. Agreement § 3(a). Ameris performed by forbearing from pursuing its remedies in exchange for those payments. Defendants made the initial payments but failed to pay the $5,000.00 installment

due February 1, 2026, constituting an Event of Default. Agreement § 11(c). After Ameris's written demand to cure went unanswered, Ameris terminated the Agreement and the Forbearance, leaving the outstanding principal balance of $356,528.07 immediately due and payable, plus contractual default interest at 10% per annum and Enforcement Costs. Agreement §§ 5, 12, 13. This factor weighs in favor of entry of default judgment.

3. Factor Four: The Sum of Money at Stake in the Action

Under the fourth Eitel factor, the court considers the amount of money at stake in relation to the seriousness of defendant's conduct. Here, plaintiff seeks the damages contemplated by the contract. The amount at issue is proportionate to the seriousness of defendant's conduct and this factor favors entry of default judgment.

4. Factor Five: Possibility of Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its claims. The court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F.Supp.2d at 1177. This factor favors entry of default judgment.

5. Factor Six: Whether Default Was Due to Excusable Neglect

Upon review of the record before the court, there is no indication that the default was the result of excusable neglect. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Plaintiff served the defendants with the summons and complaint. ECF Nos. 5 and 6. Moreover, plaintiff served defendants by mail with notice of its application for default judgment. ECF No. ECF No. 15 at 18. Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendants failed to defend in this action. Thus, the record supports a conclusion that the defendants have chosen not to defend this action, and not that the default resulted from any

excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

6. Factor Seven: Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Accordingly, although the court is cognizant of the policy favoring decisions on the merits – and consistent with existing policy would prefer that this case be resolved on the merits – that policy does not, by itself, preclude the entry of default judgment.

7. Conclusion: Propriety of Default Judgment

Upon consideration of all the Eitel factors, the court concludes that plaintiff is entitled to the entry of default judgment against defendant. What remains is the determination of the terms of judgment.

C. Terms of Judgment

Plaintiff seeks money damages in the amount of $356,528.07, reflecting the outstanding portion of the Indebtedness, plus post-default interest accruing at the contractual default rate of 10% from February 1, 2026 to July 20, 2026, in the amount of $16,607.30, and $97.69 per day thereafter (25 days through the date of this order, amounting to $2,442.25). The total amounts to $378,019.87. The court finds that this sum adequately reflects the contractual damages. Plaintiff also seeks an award of fees and costs to be determined by a subsequent motion.

## IV. Conclusion

It is RECOMMENDED THAT plaintiff's motion for default judgment (ECF No. 15) be granted and judgment be entered in plaintiff's favor in the amount of $378,019.87, plus attorneys' fees and costs to be determined by subsequent order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: August 17, 2026

Allison Claire

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE